IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHEAMUS MCCARTHY, et al,

    Plaintiff,

v().

FRANCIS SMOLINSKY, et al,

    Defendants.

CIVIL ACTION
NO. 17-0028

## MEMORANDUM

**SCHMEHL, J.** /s/ JLS                                                                    JANUARY 12, 2018

      Sheamus McCarthy and Brittany Galluppi ("Plaintiffs") move for leave to amend the Complaint. Plaintiffs seek to: 1) re-plead individual capacity claims against Defendants Francis Smolinsky and Adrian Shchuka if this Court finds their official-capacity claims barred by immunity; 2) withdraw claims of equal protection; and 3) change a date within the complaint. Defendants Francis Smolinsky, Adrian Shchuka, and Josh Shapiro do not contest Plaintiffs' motion with regards to the withdrawal of the equal protection claim and change of date; however, Defendants would not object to granting leave for Plaintiffs to file an amended complaint against Defendants in their individual capacities "only if the Court decides that neither absolute nor qualified immunity apply to Shchuka and Shapiro." (ECF Docket No. 13, at 2.)

      This case arises from alleged Constitutional violations by Defendants Francis Smolinsky, State Probation and Parole Agent, Adrian Shchuka, Senior Deputy Attorney General, and Josh Shapiro, Pennsylvania Attorney General. Plaintiffs argue Defendants violated several rights originating from Mr. Smolinsky's forfeiture of four thousand nine hundred forty-one dollars ($4,941) from Mr. McCarthy's bedroom.

For the reasons stated below, this Court will grant in part and deny in part Plaintiffs' Motion to Amend. This Court will also grant in part and deny in part Defendants' Motion to Dismiss. Accordingly, Defendants Adrian Shchuka and Josh Shapiro are dismissed as they are entitled to immunity from suit. Plaintiffs are granted leave to amend the Complaint within twenty (20) days from the date of this Opinion.

**A.     Standard of Review**

Federal Rule of Civil Procedure 15(a) provides "leave [to amend] shall be freely given when justice so requires." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997). The specific grounds for denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility. *Id.* (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Defendants argue amendment would be futile. Our Circuit defines "futility" as whether "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citing 3 *Moore's* at ¶ 15.08[4], at 15–81)). Therefore, we must apply Rule 12(b)(6) standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a

"sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

**B. Facts**

On October 14, 2015, Defendant Smolinsky, as part of his parole supervision, visited the residence of Mr. McCarthy – which he shares with Ms. Galluppi. (ECF Docket No. 7, ¶ 14.) Upon arriving, Mr. Smolinsky contacted the Quakertown Borough Police Department to assist in conducting a warrantless search of the premises. (Id. at ¶ 17.) During the search of Mr. McCarthy's residence, Mr. Smolinsky found four thousand nine hundred forty-one dollars ($4,941) in cash located in Mr. McCarthy's bedroom. (Id. at ¶ 18.) Plaintiffs stated this cash was a product of their gainful employment and should not be seized. (Id. at ¶ 19.) During his visit, Mr. Smolinsky did not discover controlled substances or paraphernalia, nor did Mr.

Smolinsky find evidence of drug trafficking; nevertheless, Mr. Smolinsky confiscated the cash and removed it at the conclusion of the visit. (Id. at ¶ 21.)

Quakertown Borough Police Department did not arrest Mr. McCarthy following Mr. Smolinsky's parole visit. (Id. at ¶ 24.) Mr. Smolinsky produced the seized cash to the Pennsylvania Attorney General around October 16, 2015. (Id. at 25.) Over the next five (5) months, Mr. McCarthy met with Mr. Smolinsky as part of his parole supervision. (Id. at ¶ 26.) During these encounters, Mr. McCarthy inquired about the status of his confiscated money; Mr. Smolinsky indicated that the seized cash would be forfeited to the state. (Id. at ¶ 27.) Five (5) months after the forfeiture, Mr. McCarthy retained counsel and filed a Motion for Return of Property in the Bucks County Court of Common Pleas. (Id. at ¶ 29.) Following Mr. McCarthy's motion, the Court of Common Pleas issued an Order scheduling the matter for hearing on June 3, 2016. (Id. at ¶ 30.)

Prior to the hearing in Bucks County, on May 27, 2016, the Attorney General's office filed a Forfeiture Petition regarding the $4,941 seized at Mr. McCarthy's residence. (Id. at ¶ 46.) Plaintiffs argue the Attorney General's office did not conduct an investigation into the source of Plaintiffs' cash during the eight (8) months the office held the cash. (Id. at ¶ 48.) Following the contest hearing, the Bucks County Court of Common Pleas denied the Attorney General's Forfeiture Petition and ordered the money returned to Plaintiffs. (Id. at ¶ 49.) Plaintiffs presently argue Defendants Shapiro and Shchuka violated their guaranteed rights under the Constitution by failing to file a forfeiture petition for nearly eight (8) months.

**C. Analysis**

Plaintiffs assert federal law claims against Mr. Smolinsky, Mr. Shchuka, and Mr. Shapiro, in their official capacities, or alternatively, in their individual capacities. Plaintiffs

argue Defendants violated their civil and property rights while executing a civil assert forfeiture in the Commonwealth of Pennsylvania. Plaintiffs' argument stems from Mr. Smolinsky's forfeiture of four thousand nine hundred forty-one dollars ($4,941) from Plaintiffs' bedroom.

Plaintiffs originally brought this action against Defendants in their official capacities; following Defendants' motion to dismiss, Plaintiffs moved to amend in the alternative – withdrawing the equal protection claim and re-pleading claims against Defendants in their individual capacities. This Court will not address the claims against Mr. Smolinsky at this time and will only address the immunity claims made by Mr. Shapiro and Mr. Shchuka.

> **1. Defendants Shapiro and Shchuka are immune from suit in their official capacities for monetary and injunctive relief under the Eleventh Amendment.**

   a. <u>Monetary Relief</u>

While suits against officials in their official-capacity are suits against the State and typically protected by immunity, it is well recognized that officials are generally immune from suits seeking monetary relief. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, n.10 (1989). Claims brought under § 1983 are subject to the Eleventh Amendment which precludes private federal litigation against states, state agencies, and state officials in their official capacities. Suits against state officials in their official capacity are treated as suits against the State because the state official "assume[s] the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 25- 27 (1991). The Supreme Court finds an official-capacity suit against a state officer "is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself." *Id.* at 26 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). The Court has held that "[n]either a State nor its officials acting in their official capacities are 'persons' under Section 1983." *Will*, 491 U.S. at 71. As a result, when a state official is sued in their official capacity, the "real party

5

in interest" is the government entity of which the official is an agent. However, a distinction exists if the relief sought is monetary or injunctive.

The Pennsylvania Office of Attorney General – the governmental entity of which Mr. Shapiro and Mr. Shchuka are agents – is afforded immunity as an instrumentality of the Commonwealth of Pennsylvania. Our Circuit has stated: "Any official capacity claim fails because the Pennsylvania Office of the Attorney General . . . share[s] in the immunity conferred to the States by the Eleventh Amendment." *Addlespurger v. Corbett*, 461 Fed.Appx. 82, 86 (3d Cir. 2012). Because the Eleventh Amendment precludes private federal litigation against states, immunity extends to the Pennsylvania Office of Attorney General for claims raised under § 1983.[1] *See Benn v First Judicial District*, 426 F.3d 233, 241 (3d Cir. 2005) (citing cases where the Third Circuit granted Eleventh Amendment immunity to Pennsylvania agencies and entities such as the Pennsylvania Department of Public Welfare, Pennsylvania Department of Labor and Industry, state university system, Pennsylvania Department of Environmental Resources, and Pennsylvania Department of Transportation).

Moreover, the Supreme Court provided in a footnote: "there is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985). Plaintiffs' do not presently allege a *Monell* claim. Without a *Monell* claim or waiver of Eleventh Amendment immunity, "a State cannot be sued

---

[1] Eleventh Amendment immunity is subject to three basic exceptions: "(1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under *Ex parte Young*, a state official may be sued in his or her official capacity for prospective injunctive relief. *Hollihan v. Pennsylvania Department of Corrections*, 159 F.Supp.3d 502, 510 (M.D. Pa. 2016) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-70 (1997). None of the three exceptions apply here. Pennsylvania has not waived its immunity and statutory law provides the Commonwealth with immunity from suit. 1 Pa. C.S. § 2310; *see also* 42 Pa. C.S. § 8521(b).

directly in its own name" leading to an imposition of fee liability upon the governmental entity. *Id.* at 168.

Plaintiffs' prayer for relief includes actual and punitive damages, including attorney's fees and costs of litigation. Plaintiffs allege Mr. Shapiro and Mr. Shchuka violated their due process rights by failing to initiate forfeiture proceedings prior to March 2016 – eight months after the forfeiture. (ECF Docket No. 7, ¶ 29, 59.) Plaintiffs contend Mr. Shchuka's "dilatory conduct" resulted in prejudice to the Plaintiffs. (ECF Docket No. 12-1, at 6.) Plaintiffs also allege the Attorney General's office "conducted no investigation whatsoever into the source of Plaintiffs' cash over the preceding eight (8) months and had no explanation for its inordinate delay in filing a forfeiture petition." (ECF Docket No. 7, ¶ 48.) Because the type of relief sought by Plaintiffs is monetary in nature, Plaintiffs' official capacity claims against Mr. Shapiro and Mr. Shchuka cannot proceed.

Given Plaintiffs' request for monetary relief, Mr. Shapiro and Mr. Shchuka are immune from suit under the Eleventh Amendment for a claim of monetary relief.

b. Injunctive Relief

Unlike official-capacity claims for monetary relief, federal courts under *Ex parte Young* "may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337 (1979); *see generally Ex parte Young*, 209 U.S. 123 (1908). Under *Ex parte Young*, the Supreme Court determined that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983" because actions for prospective injunctive relief are not treated as actions against the State. *Will*, 491 U.S. at 71, n.10. The injunctive relief, however, must be prospective and not retroactive or retrospective.

7

Although state sovereignty is vital, it is are outweighed by the interest in ending a continuing violation of federal law. *Id.* (Stevens, J. dissenting).

In applying *Ex parte Young*, "a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002). In *Verizon*, the Court concluded Verizon's declaratory relief – seeking both *past* and *future* declarations affecting private parties – did not apply to the *past liability* of the State or any of its commissioners. *Id.* at 646 (emphasis added). Verizon sought injunctive relief arguing that the "reciprocal compensation" the Commission forced them to pay violated federal law. *Id.* Without deciding the merits, the Supreme Court concluded the Commission's decision did not "impose upon the State 'a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.'" *Id.* Simply, though Verizon's prayer for relief consisted of both retrospective and prospective injunctive relief, only the prospective relief applied to the State, permitting suit under *Ex parte Young*. *Id.*

Notwithstanding the above, a party must also have basic standing to bring a claim for prospective relief. Our Circuit requires the party seeking relief "show that he faces a realistic threat from the future application of . . . [the] polic[y]" – e.g. first-party standing. *Worthy v. N.J. State Parole Bd.*, 184 Fed.Appx. 262, 265 (3d Cir. 2006). Absent first-party standing, third-party standing may be alleged when: 1) the litigant suffers an injury in fact which gives them sufficient concrete interest in the outcome; 2) a close relationship to the third party; and 3) "some hindrance to the third party's ability to protect his own interest." *Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d 181, 189 (3d Cir. 2006). "[T]he plaintiff generally must assert his own legal rights

and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citing *Tileston v. Ullman*, 318 U.S. 44 (1943)).

On its face, Plaintiffs' injunctive relief appears to seek retrospective relief – not prospective relief. Specifically, Plaintiffs pray for: "an Order requiring the Attorney General to identify all money and/or property, within his possession, confiscated from people in the Commonwealth of Pennsylvania that is not subject to a pending criminal prosecution or a docketed forfeiture action, and to promptly file forfeiture complaints in all cases, or return the money or property forthwith." (ECF Docket No. 7, at 22.) Unlike *Verizon*, here Plaintiffs' relief focuses on past confiscations and alleged transgressions of the Attorney General's office as the basis for relief. Plaintiffs' relief is retrospective in nature and cannot support a claim for injunctive relief. Plaintiffs also lack first or third-party standing against Mr. Shapiro and Mr. Shchuka in their official capacities.

Mr. Shapiro and Mr. Shchuka are immune from suit under the Eleventh Amendment for a claim of retrospective injunctive relief.

### 2. Defendants Shapiro and Shchuka are entitled to absolute prosecutorial immunity in their individual capacities.

State officials sued in their individual capacities are "persons" within the meaning of § 1983. *Hafer*, 502 U.S. at 31.[2] However, prosecutors such as Attorneys General and special assistants are entitled to absolute prosecutorial immunity when acting within the scope of their duties.[3] *Imbler v. Pachtman*, 424 U.S. 409, 422 (1976). Prosecutorial immunity applies when prosecutors act as officers of the court (e.g. within the scope of duty) and not as administrators or

---

[2] The Supreme Court in *Hafer* concluded the newly elected auditor general of Pennsylvania could be sued in her personal-capacity for discharging employees from their jobs in office. *See Hafer v. Melo*, 502 U.S. 21, 21-22 (1991).

[3] This Court's use of "scope of duty" is not to be confused with the phrase "acting in their official capacity" which refers to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991).

investigative officers. *Id.* at 431, n.10. A prosecutor acts as an "officer of the court" if the act is "intimately associated with the judicial phase of the criminal process," or "connected with the initiation and conduct of the prosecution." *Burns v. Reed*, 500 U.S. 478, 491-92 (1991) (finding prosecutor's action of appearing before a judge and presenting evidence in support of a search warrant involved the prosecutor's role as "office of the court" rather than "administrator or investigative officer.") (citing *Imbler*, 424 U.S. at 430-31). Therefore, "officials seeking absolute immunity must show that such immunity is justified for the governmental function at issue." *Hafer*, 502 U.S. at 29.

A prosecutor's action against guilty property (*in rem* forfeiture) is more "intimately connected with the criminal process than [an] administrative agency hearing." *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3d Cir. 1991). Our Circuit has already concluded that individual prosecutors are entitled to absolute immunity in their personal capacities for initiating forfeiture proceedings. *Banda v. Burlington County*, 263 Fed.Appx. 182, 183 (3d Cir. 2008). Any such limitation imposed on the official's discretion with respect to the initiation of administrative proceedings "might be distorted if their immunity from damages arising from that decision was less than complete." *Butz v. Economou*, 438 U.S. 478, 515 (1978). As a result, initiation of *in rem* civil proceedings for the forfeiture of criminal property falls under the prosecutor's duty, triggering absolute immunity.

Absolute immunity extends to "officials when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action." *Schrob*, 948 F.2d at 1411. As such, there is no distinction between prosecutors acting as the government's advocate in criminal or civil proceedings. *See Fry v. Melaragno*, 939 F.2d 832 (9th Cir. 1991) (applying absolute immunity to Internal Revenue

10

Service attorneys in civil enforcement proceedings); *Meade v. Grubbs*, 841 F.2d 1512, 1532–33, n.18 (10th Cir. 1988) (finding state official entitled to absolute immunity for alleged failure to initiate civil or criminal complaint); *Flood v. Harrington*, 532 F.2d 1248, 1251 (9th Cir. 1976) (finding absolute immunity for government attorneys in civil enforcement actions); *see also Meyers v. Contra Costa County Dep't of Social Services*, 812 F.2d 1154, 1157 (9th Cir. 1987) (finding child services worker absolutely immune for initiating and pursuing civil child dependency proceedings), *cert. denied*, 484 U.S. 829 (1987).

The court's application of absolute immunity, however, is not unlimited. As addressed above, officials seeking absolute immunity must show that the immunity is justified for the governmental function at issue. *Hafer*, 502 U.S. at 29. While courts may apply immunity for government officials "lawfully engaged" in enforcing the drug forfeiture laws, "there is no immunity from criminal liability for unlawful enforcement actions such as exceeding authority in executing a search warrant or maliciously procuring a search warrant." *Schrob*, 948 F.2d at 1413; *see also* 18 U.S.C. § 2234-35. Further, state executive officials are not entitled to absolute immunity for official actions such as administrative employment decisions, with "no more than qualified immunity [attaching] to administrative employment decisions, even if the same official has absolute immunity when performing other functions." *Hafer*, 502 U.S. 21, at 29 (citing *Forrester v. White*, 484 U.S. 219 (1988) (dismissal of court employee by state judge); *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (discharge of Air Force employee, allegedly orchestrated by senior White House aides) (action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979) (dismissal of congressional aide) (*Bivens* action)).

As Defendants correctly note, the claims against Mr. Shapiro and Mr. Shchuka arise solely out of the alleged failure to timely initiate the forfeiture proceedings relating to the cash seized from Plaintiffs' apartment. Plaintiffs argue the claim against Mr. Shapiro is based entirely on the Attorney General's office's "failure to maintain policies and procedures to prevent dilatory compliance with the requirements" of Pennsylvania's forfeiture statute. (ECF Docket No. 12-1, at 6.) I would note that Mr. Shapiro is only a stand-in for the previous Attorney General as the facts in this case all occurred prior to when he took office in 2017. Therefore, Mr. Shapiro could not possibly be liable for failing to maintain policies and procedures prior to when he took office. Accordingly, Mr. Shapiro and Mr. Shchuka are clearly entitled to prosecutorial immunity because the forfeiture proceedings are intimately connected with the criminal process; Defendants are just as clearly not conducting administrative employment decisions.

However, Mr. Shapiro and Mr. Shchuka may be mistaken in their claim that they are entitled to absolute immunity "regardless of the appropriateness or motivation of their alleged treatment of the forfeiture proceeding"; their immunity does not extend to criminal liability for unlawful enforcement actions – as the Supreme Court concluded in *Schrob*. Nonetheless, given the fact that this is not the case in the instant matter, both Defendants are still entitled to prosecutorial immunity.

Because Mr. Shapiro and Mr. Shchuka were acting in their official roles as Attorney General and Senior Deputy to the Attorney General and there is no evidence to the contrary, both are entitled to absolute prosecutorial immunity.

### 3. The personal property immunity waiver under 42 Pa.C.S.A. § 8522 does not apply to Mr. Shapiro and Mr. Shchuka.

Under 42 Pa.C.S.A. § 8522, immunity is waived in specific circumstances "for damages *arising out of a negligent act* where the damages would be recoverable under the common law or

a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." *Larsen v. State Employees' Retirement System*, 553 F.Supp.2d 403, 421 (M.D. Pa. 2008) (emphasis added) (citing 42 Pa.C.S.A. § 8522(a)). The exceptions to immunity, however, are strictly and narrowly construed. *Sugalski v. Commonwealth, et al.*, 569 A.2d 1017, 1019 (Pa. Commw. Ct. 1990) (citing *Mascaro v. Youth Study Center*, 523 A.2d 1118 (Pa. 1987)).

Plaintiffs allege the § 8522(b)(3) exception for claims arising out of "[t]he care, custody or control of personal property in the possession or control of Commonwealth parties" precludes Mr. Shapiro and Mr. Shchuka from raising immunity. 42 Pa.C.S.A. § 8522(b)(3). This argument fails for two reasons: 1) the immunity exceptions in § 8522 "apply only to negligent acts"; and 2) the personal property exception under (b)(3) "may only apply to those cases where the property itself is alleged to have caused the injury." *Larsen*, 553 F.Supp.2d at 421; *see also Sugalski*, 569 A.2d at 1019. Neither condition applies here.

First, Plaintiffs do not allege Defendants committed *negligent acts* resulting in injury. (emphasis added). Specifically, Plaintiffs allege: 1) wrongful deprivation of private property without due process by failing to file a timely forfeiture action (Counts I – II); 2) wrongful confiscation of property without probable cause (Count III); and 3) denial of equal protection of the law by malicious prosecution (Count IV). (ECF Docket No. 7, ¶¶ 64-92.) As there is no claim of negligence, the § 8522 immunity exception does not apply.

Second, Plaintiffs do not allege the property itself caused the injury. In *Sugalski*, plaintiffs claimed the harm occurred when defendants "wrongfully and tortuously seized and retained" plaintiffs' property, resulting in substantial loss due to defendants' negligent breach of a fiduciary. *Sugalski*, 569 A.2d at 1019. The court noted the property held by defendants – the

money itself – did not cause the harm; rather, the harm was caused by "[defendants'] failure to handle the funds as [plainitffs] would have wished which resulted in [plainitffs'] claimed injury." *Id.* (citing *Serrano v. Pennsylvania State Police*, 568 A.2d 1006 (Pa. Commw. Ct. 1990) (concluding plaintiffs' confiscated packet of white powder did not trigger the personal property exception because the injury was caused by the failure to quickly analyze the contents of the packet, not the packet of powder itself)).

Plaintiffs allege Mr. Shchuka delayed initiating "legally required process while retaining possession of Plaintiffs' money." (ECF Docket No. 7, ¶ 70.) Further, Plaintiffs allege Mr. Shapiro failed to maintain procedures and policies to identify money and/or property confiscated that is not subject to pending criminal prosecution, and failed to supervise subordinates in order to ensure timely filing of forfeiture petitions. Mr. Shapiro's actions therefore allegedly resulted in prejudice to Plaintiffs. (Id. at ¶¶ 77-78.) Plaintiffs' claims do not allege the property itself (e.g. money) caused the injury. Similar to *Sugalski* and *Serrano*, here the money itself did not cause the alleged harm; rather, the alleged failure to timely file a forfeiture petition caused the harm. Therefore, the property in the custody of Mr. Shapiro and Mr. Shchuka did not cause the Plaintiffs' injury. Section 8522(b)(3) does not apply.

**D.    Conclusion**

In the accompanying Order, this Court will grant in part and deny in part Plaintiffs' Motion to Amend and will grant in part and deny in part Defendants' Motion to Dismiss. Defendants Shapiro and Shchuka are dismissed as they are entitled to immunity and amendment based on their respective capacities would be futile. Plaintiffs are granted leave to amend the Complaint within twenty (20) days from the date of this Opinion.

14